# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ERNST VALERY, on Behalf of Himself, and All Others Similarly Situated, <br><br>       Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY; and WELLS FARGO BANK, N.A., <br><br>       Defendants. | Case No.: 1:21-cv-05464-JPO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S UPDATED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**MCGUIREWOODS LLP**
1251 Avenue of Americas
20th Floor
New York, NY 10020-1104
Telephone: 212.548.2100
Facsimile: 212.548.2150

Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MUNGER TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: 415.512.4082
Facsimile: 415.699.6982

*Counsel for Defendants Wells Fargo & Company and Wells Fargo Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     FACTUAL ALLEGATIONS........................................................................ 1

III.    LEGAL STANDARD ................................................................................ 2

IV.     LEGAL ANALYSIS ................................................................................. 2

      A.      Plaintiff's California State Law Claims Fail as a Matter of Law......................... 2

            i.      California Law Is Presumed Not to Apply Extra-Territorially................ 3

            ii.     Plaintiff's Unruh Act and UCL Claims Should Be Dismissed as the Alleged Discrimination Occurred in Maryland and the Statutes Do Not Apply Outside California................................................................. 3

      B.      Plaintiff Incorrectly Names Wells Fargo & Company as a Defendant................ 7

V.      CONCLUSION......................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archibald v. Cinerama Hawaiian Hotels, Inc.*,
  140 Cal. Rptr. 599 (Cal. Ct. App. 1977)..............................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................2

*Brown v. Wells Fargo & Co.*,
  284 F.R.D. 432 (D. Minn. July 25, 2012)............................................................8

*Cannon v. Wells Fargo Bank, N.A.*,
  917 F. Supp. 2d 1025 (N.D. Cal. 2013).............................................................6

*Church Village, LLC v. General Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000).............................................................5

*In re Digital Music Antitrust Litigation*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011)................................................................7

*Dumont v. Litton Loan Servicing, LP*,
  No. 12–cv–2677–ER–LMS, 2014 WL 815244 (S.D.N.Y. 2014)........................8

*Ebeid v. Facebook, Inc.*,
  No. 18-cv-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019)..................5

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014)...............................................................3

*Gross v. Symantec Corp.*,
  No. 12–cv–00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012) ..............6

*Harte v. Ocwen Financial Corp.*,
  No. 13-CV-5410 (MKB) (RER), 2016 WL 11120941 (E.D.N.Y. Mar. 11,
  2016)..................................................................................................................8

*Hendricks v. Wells Fargo Bank, N.A.*,
  No. CV-15-01299-MWF, 2015 WL 1644028 (C.D. Cal. Apr. 14, 2015) ............7

*Ice Cream Distrib. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
  C–09–5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) .......................4

*Kavanagh v. Zwilling*,
  578 F. App'x 24 (2d Cir. 2014) .........................................................................2

*Keum v. Virgin Am. Inc.*,
    781 F. Supp. 2d 944 (N.D. Cal. 2011)..................................................................... 4

*Loving v. Princess Cruise Lines, Ltd.*,
    No. CV-08–2898-JFW, 2009 WL 7236419 (C.D. Cal. 2009)................................. 4

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*,
    959 F. Supp. 2d 476 (S.D.N.Y. 2013)..................................................................... 7

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
    975 F. Supp. 2d 392 (S.D.N.Y. 2013)..................................................................... 8

*New York Courts Clerks Ass'n v. Unified Court Sys. of the State of New York*,
    25 F. Supp. 459 (S.D.N.Y. 2014)............................................................................ 2

*Norwest Mortg., Inc. v. Super. Ct.*,
    85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999)............................................................... 4

*Perez v. Wells Fargo & Co.*,
    No. 17-CV-00454-MMC, 2017 WL 3314797 (N.D. Cal. Aug. 3, 2017) ............... 5

*Rodriguez v. Wells Fargo Bank, N.A.*,
    No. 16-cv-02592-TEH, 2016 US Dist. LEXIS 94847 (N.D. Cal. July 20,
    2016)........................................................................................................................ 8

*Silverman v. Wells Fargo & Co.*,
    No. 18-CV-03886-YGR, 2018 WL 6046209 (N.D. Cal. Nov. 19, 2018).............. 5

*Strojnik v. Resort at Indian Springs, LLC*,
    No. 19-CV-04616-SVK, 2019 WL 6913039 (N.D. Cal. Dec. 19, 2019) ............... 4

*Sullivan v. Oracle Corp.*,
    254 P.3d 237 (Cal. 2011) ........................................................................................ 3

*Tat Tohumculuk, A.S. v. H.J. Heinz Co.*,
    No. CV-13–0773-WBS, 2013 WL 6070483 (E.D. Cal. Nov. 14, 2013)................ 4

*Tidenberg v. Bidz.com, Inc.*,
    No. CV085553PSGFMOX, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ............... 4

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011)..................................................................... 6

*Valery v. Wells Fargo & Co., et al.*,
    Case No. 20-cv-08874-VC, (No. 83) ....................................................................... 6

*Vasquez v. Wells Fargo Bank, N.A.*,
    77 F. Supp. 3d 911 (N.D. Cal. 2015)...................................................................... 9

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ..................................................................... 5

*Wilkinson v. Wells Fargo Bank, N.A.*,
    No. 3:19-CV-00580-RJC, 2020 WL 2542867 (W.D.N.C. May 19, 2020) ........................... 9

**Statutes**

Cal. Civ. Code § 51(b) ................................................................................................. 4

Unfair Competition Law ................................................................................*passim*

Unruh Civil Rights Act, sections 51 and 52 of the California Civil Code .........................*passim*

## I.      PRELIMINARY STATEMENT

Notwithstanding his agreement that New York law governs his relationship with Wells Fargo, and that his allegations concern events supposedly occurring at a Baltimore, Maryland bank branch, Plaintiff Ernst Valery's ("Plaintiff") Second Amended Complaint ("Complaint") includes claims for violation of *California's* Unruh Civil Rights Act, sections 51 and 52 of the California Civil Code (the "Unruh Act") and *California's* Unfair Competition Law ("UCL"). As a matter of law, these statutes do not apply to conduct outside of California. Accordingly, these California state law claims should be dismissed with prejudice.

Further, all of Plaintiff's claims against Wells Fargo & Co. ("WFC") should be dismissed because he alleges no wrongful conduct by that entity. WFC's subsidiary, Wells Fargo Bank, N.A. ("WFB"), is the entity that engages in banking activity and at which Plaintiff's allegations are directed. WFC is a bank holding company and is not alleged to have done anything.

## II.     FACTUAL ALLEGATIONS

The Second Amended Complaint alleges that, on October 9, 2020, "[Plaintiff] and his wife visited the Wells Fargo branch at 5701 Reisterstown Road, Baltimore, Maryland, which is the branch closest to their home[,]" attempting to deposit a check into their joint account. Second Amended Complaint ("SAC") ¶ 4. The check he and his wife sought to deposit was issued by the State of Maryland in the amount of $3,000,000.00 and made payable to "Ernst Valery, Dana L. Valery" (the "Check"). *Id*. Plaintiff alleges that the Check was a payment in connection "with a historic tax credit" awarded by the State of Maryland for a real estate development project directed by Plaintiff. *Id.*

Plaintiff asserts that during the course of his October 9, 2020 visit, the Wells Fargo branch manager discriminated against Plaintiff. *Id.* ¶¶ 4-5. Plaintiff claims that the Wells Fargo branch manager "barrage[d]" him with "interrogatives questioning his entitlement to the funds" and

"affirmatively suggested [Plaintiff] was not the type of person who should be allowed to possess proceeds in such an amount." *Id.* ¶ 4. Plaintiff also contends that, because he has been a Wells Fargo customer for over 20 years "with multiple accounts under his name," Wells Fargo should have "simply deposit[ed] the check and thank[ed] [Plaintiff] for his continued patronage of Wells Fargo." *Id.* Plaintiff contends he left the branch unable to deposit the Check. *Id.*

Plaintiff reiterates throughout the Second Amended Complaint that the alleged discrimination occurred in Maryland. *Id.* ¶ 4 (alleging that Plaintiff went to the Wells Fargo branch in Baltimore, Maryland "closest to [his] home" to deposit the Check); *Id.* ¶ 5 (referring to the Wells Fargo branch that refused to deposit his check as the "branch in his own backyard").

## III.    LEGAL STANDARD

A court must dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, it is not bound to accept "conclusions unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences." *Kavanagh v. Zwilling*, 578 F. App'x 24, 24 (2d Cir. 2014). In short, "a complaint . . . must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). In other words, "[p]laintiffs must allege sufficient facts to 'nudge their claims across the line from conceivable to plausible.'" *New York Courts Clerks Ass'n v. Unified Court Sys. of the State of New York*, 25 F. Supp. 459, 464 (S.D.N.Y. 2014) (quoting *Twombly*, 550 U.S. at 570).

## IV.    LEGAL ANALYSIS

### A.    Plaintiff's California State Law Claims Fail as a Matter of Law.

Plaintiff's claims for violation of California's Unruh Act (Count II) and UCL (Count IV)

should be dismissed because the purported discriminatory conduct occurred in Maryland and these statutes do not apply outside California.[1]

### i.     California Law Is Presumed Not to Apply Extra-Territorially.

"California's Supreme Court has made clear that there is a strong presumption against the extra-territorial application of California law." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129–30 (N.D. Cal. 2014).  In *Sullivan v. Oracle Corp.,* 254 P.3d 237, 248 (Cal. 2011), the court reiterated this long-held rule:

> However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'

*Id.* (quoting *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 968 P.2d 539, 553 (Cal. 1999)) (internal citation and quotation marks omitted). "This presumption against the extraterritorial application has been established in California for [over] a century." *Ehret*, 68 F. Supp. 3d at 1130 (citing *see N. Alaska Salmon Co. v. Pillsbury,* 162 P. 93, 94 (Cal. 1916)).  This presumption makes sense. *Archibald v. Cinerama Hawaiian Hotels, Inc.*, 140 Cal. Rptr. 599, 604 (Cal. Ct. App. 1977) ("A state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way, even though the welfare or health of its citizens may be affected when they travel to that state.").

### ii.    Plaintiff's Unruh Act and UCL Claims Should Be Dismissed as the Alleged Discrimination Occurred in Maryland and the Statutes Do Not Apply Outside California.

This presumption against extraterritorial application of California statutes applies to both

---

[1] In fact, Plaintiff opened his account in New York and the governing Deposit Account Agreement requires application of New York law. Transfer Opp., ECF No. 30, at 10 ("[T]he construction of the Customer Agreement is governed by New York law").

the Unruh Act and the UCL.  In fact, the Unruh Act's text expressly limits its application to alleged discrimination suffered within California.  Cal. Civ. Code § 51(b) ("All persons *within the jurisdiction of this state* are free and equal…") (emphasis added); *Strojnik v. Resort at Indian Springs, LLC*, No. 19-CV-04616-SVK, 2019 WL 6913039, at *7 (N.D. Cal. Dec. 19, 2019) ("by its own terms, [Section 51(b)] is expressly limited to discrimination that takes place within California's borders.") (internal citations omitted).  Accordingly, individuals outside the state cannot bring an Unruh Act claim against a California company.  *See Tat Tohumculuk, A.S. v. H.J. Heinz Co.*, No. CV-13–0773-WBS, 2013 WL 6070483, at *7 (E.D. Cal. Nov. 14, 2013).

Similarly, "the UCL does not apply to actions occurring outside of California that injure non-residents." *Ice Cream Distrib. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, C–09–5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012) (internal citation and quotation marks omitted); *Norwest Mortg., Inc. v. Super. Ct.*, 85 Cal. Rptr. 2d 18, 25 (Cal. Ct. App. 1999) (vacating trial court's order granting class certification to non-California residents for conduct that occurred outside of California); *Tidenberg v. Bidz.com, Inc.*, No. CV085553PSGFMOX, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) ("[T]he UCL was neither designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California.").

Courts uniformly accept this limitation on the reach of the Unruh Act and UCL and dismiss these claims when the alleged discrimination occurs outside of California.  *See e.g.*, *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 955 (N.D. Cal. 2011) (granting motion for judgment on the pleadings regarding plaintiff's Unruh Act claim because "[t]he Unruh Act only applies to discrimination that takes place within California's jurisdiction"); *Loving v. Princess Cruise Lines, Ltd.*, No. CV-08–2898-JFW, 2009 WL 7236419, *8 (C.D. Cal. 2009) (granting summary

judgment on Unruh Act claim because the Unruh Act does not apply to "claims of nonresidents of California injured by conduct occurring beyond California's borders."); *Church Village, LLC v. General Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) ("With respect to the UCL specifically, section 17200 does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California."); *Silverman v. Wells Fargo & Co.*, No. 18-CV-03886-YGR, 2018 WL 6046209, at *4 (N.D. Cal. Nov. 19, 2018) (dismissing causes of action pursuant to the UCL by non-resident plaintiffs who did "not allege[] facts suggesting that [they] suffered harm in California.").

For example, in *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015), a Florida resident accused a California company's subscription service of discriminating on the basis of age. The court dismissed the Unruh Act claim because the complaint did not allege that any discrimination against the plaintiff took place in California. *Id.* Similarly, in *Perez v. Wells Fargo & Co.*, No. 17-CV-00454-MMC, 2017 WL 3314797, at *1 (N.D. Cal. Aug. 3, 2017), a Texas resident, Acosta, alleged that Wells Fargo denied his application for a commercial equipment loan and, additionally, cancelled a credit card previously issued him, in violation of the Unruh Act. The court dismissed Acosta's Unruh Act claim because Acosta alleged that he was a Texas resident, applied for and was denied credit in Texas. *Id.* at *6. Finally, in *Ebeid v. Facebook, Inc.*, No. 18-cv-07030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019), an Arizona resident brought an Unruh Act claim against Facebook, which is located in California. In dismissing plaintiff's Unruh Act claim, the court plainly stated: "[p]laintiff is a resident of Arizona, [] but has not even asserted that the alleged discrimination took place while he was in California . . [f]or [that] reason[], plaintiff has failed to state a [Unruh Act] claim." *Id.*

Here, Plaintiff resides in Maryland, the allegedly discriminatory conduct occurred in

Maryland, and the parties contractually agreed New York law governs his accounts.  SAC ¶¶ 4, 9; *see also* Transfer Ord., *Valery v. Wells Fargo & Co., et al.*, Case No. 20-cv-08874-VC, (No. 83).  Plaintiff specifically alleges that he and his wife "visited the Wells Fargo branch at 5701 Reisterstown Road, Baltimore, Maryland, which is the branch closest to their home[,]" for the purpose of depositing a $3 million check from the State of Maryland.  SAC ¶ 4.  Plaintiff also alleges that the Wells Fargo branch manager "emerged and proceeded to barrage him . . . with a battery of interrogatives questioning his entitlement to the funds . . ." *Id.*  Further, Plaintiff alleges that he left the Wells Fargo branch unable to deposit the $3 million Check.  *Id.*  As alleged in the Second Amended Complaint, the foregoing all took place in the state of Maryland.  Thus, the Unruh Act and UCL are inapplicable.

Plaintiff cannot render the statutes applicable merely by alleging that the bank is headquartered in California.  *See* SAC ¶ 44.  The law is well-settled that the location of a defendant's principal place of business in California, without more, does not support a plausible inference than any tortious conduct emanated from there.  *Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013) (determining that plaintiffs did not plausibly allege that Wells Fargo's alleged misconduct occurred in California simply because its principal place of business was there); *Gross v. Symantec Corp.*, No. 12–cv–00154 CRB, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012) (noting that, while plaintiff had alleged that defendant was headquartered in California, "several courts have found that this allegation is not enough to create a plausible inference that the unlawful conduct emanated from that location"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) (same).

Because the Second Amended Complaint alleges the purported discrimination occurred outside California, Plaintiff's claims under the Unruh Act and UCL must be dismissed with

prejudice.

**B.      Plaintiff Incorrectly Names Wells Fargo & Company as a Defendant.**

In addition to the foregoing, Defendant WFC should be dismissed because it is improperly named as a party to this action.

WFC—a bank holding company which does not itself provide banking services—was not involved in the relevant transaction on October 9, 2020, in which Plaintiff attempted to deposit the Check at a Wells Fargo branch.  SAC ¶ 4.  Although Plaintiff's Second Amended Complaint treats "Wells Fargo" as a single entity, Plaintiff does not offer any alter ego or similar allegations justifying treating them as one.  WFC and WFB are separate entities.  WFC is a holding company and WFB is a subsidiary; indeed, the Complaint says as much.  SAC ¶ 11 (alleging that WFB "is a national banking association and the banking subsidiary of [WFC]…").  WFC asks this Court to take judicial notice of the fact that WFC is a holding company, and that WFB is a subsidiary of WFC.  *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 959 F. Supp. 2d 476, 481 (S.D.N.Y. 2013) (taking judicial notice of public filings identifying defendant as a holding company); *see also Hendricks v. Wells Fargo Bank, N.A.*, No. CV-15-01299-MWF (JEMX), 2015 WL 1644028, at *2 (C.D. Cal. Apr. 14, 2015) (taking judicial notice of Wells Fargo's corporate structure).

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries."[2]  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 417 (quoting *United States v. Bestfoods*, 524 U.S. 51,

---

[2] "Under New York choice-of-law principles, the issue of whether the corporate veil may be pierced is determined under the law of the state of incorporation." *In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (quoting *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 85 n. 10 (S.D.N.Y. 2010)). Since WFC and WFB are incorporated in Delaware, Delaware law governs their corporate separateness.

61 (1998) (internal quotation omitted) (As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013) ("It is a basic principle of corporate law that a parent will not be held liable for the acts of its subsidiaries." (citation omitted)). In order to set aside a parent and subsidiary's corporate separateness, a plaintiff must show that the "subsidiary [was] in fact a mere instrumentality or alter ego of its owner." *Harte v. Ocwen Financial Corp.*, No. 13-CV-5410 (MKB) (RER), 2016 WL 11120941, at *12 (E.D.N.Y. Mar. 11, 2016); *Dumont v. Litton Loan Servicing, LP*, No. 12–cv–2677–ER–LMS, 2014 WL 815244, at *21 (S.D.N.Y. 2014) ("To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness… [is] present.'" (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995))).

Here, WFB is a national banking association and provides banking and financial services to customers—such as Plaintiff—and is the proper party to this action. SAC ¶¶ 4, 11, 12. WFC is a holding company with no contractual relationship with Plaintiff. *Id*. Furthermore, Plaintiff has pled no facts to support an alter ego claim or to show that WFC "so controls" WFB such that the latter is "merely the instrumentality" of the former. Courts regularly reject attempts to ignore Wells Fargo's corporate structure and plead claims against WFC that should be brought against WFB. *See e.g., Rodriguez v. Wells Fargo Bank, N.A.*, No. 16-cv-02592-TEH, 2016 US Dist. LEXIS 94847, at *n.1 (N.D. Cal. July 20, 2016) ("[T]he proper Wells Fargo defendant is Wells Fargo Bank, N.A., as opposed to its parent company Wells Fargo & Co."); *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 441 (D. Minn. July 25, 2012) (dismissing Wells Fargo & Co. since Plaintiff failed to provide "substantial reasons" for the Court to "disregard the corporate entity

and find that Wells Fargo & Company [was liable for Wells Fargo Bank, N.A.'s conduct]…because it controls Wells Fargo Bank and its activities."); *Vasquez v. Wells Fargo Bank, N.A.*, 77 F. Supp. 3d 911, 923 (N.D. Cal. 2015) (former Wells Fargo employee did not have a claim against Wells Fargo & Co. because it was merely a holding company; proper defendant was Wells Fargo Bank, N.A.).

Here, Plaintiff has failed to plead ***any*** factual allegations against WFC that could subject it to liability under the claims asserted. Indeed, Plaintiff's only allegation that WFC is a proper party is that Plaintiff "reasonably believed that the Wells Fargo employees he was interacting with were jointly employed by Wells Fargo & Company and Wells Fargo Bank, N.A." SAC ¶ 12. However, this allegation has no bearing on the legal viability of Plaintiff's claims against WFC. Further, Plaintiff's allegation that he was planning to transfer the proceeds of the deposit to Wells Fargo Advisors' wealth management services is of no consequence. *Id*. Indeed, Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network, LLC—entities that are also separate from WFC. *See Wilkinson v. Wells Fargo Bank, N.A.*, No. 3:19-CV-00580-RJC, 2020 WL 2542867, at \*5 (W.D.N.C. May 19, 2020) (noting that Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC). Accordingly, WFC is an improper party to this lawsuit, and the claims against it should be dismissed with prejudice.

## V.   CONCLUSION

For the reasons set forth herein, Plaintiff's claims for violation of the Unruh Act and UCL should be dismissed and the Second Amended Complaint should be dismissed in its entirety as to WFC, with prejudice.

Dated: March 9, 2022

**MCGUIREWOODS LLP**

*/s/ Alicia Baiardo*
McGuireWoods LLP
Alicia Baiardo *(admitted via pro hac vice)*
Two Embarcadero Center, Suite 1300
San Francisco, CA  94111-3821
Telephone:  415.844.9944
Facsimile:  415.844.9922
abaiardo@mcguirewoods.com

**MUNGER TOLLES & OLSON LLP**
David H. Fry *(admitted via pro hac vice)*
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: 415.512.4082
Facsimile: 415.699.6982

*Attorneys for Defendants Wells Fargo &*
*Company and Wells Fargo Bank, N.A.*

TO: Counsel of Record (Via ECF)